McCraw v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-372-CR

PAUL KIRK MCCRAW APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY

------------

OPINION

------------

Introduction

Paul Kirk McCraw appeals from his conviction for unlawfully carrying a firearm.  In four points, he contends that the evidence is legally and factually insufficient to support the verdict, the prosecutor engaged in improper jury argument, and the trial court erred in overruling his motion to suppress.  We will reverse and render a judgment of acquittal.

Background Facts

Deputy Wilson was en route to a domestic disturbance call when the driver of a gold minivan signaled him to stop.  Because Deputy Wilson knew that the suspect had left the residence driving a gold minivan, he stopped and made contact with the driver.  Deputy Wilson asked the driver if he had any weapons, and the driver stated that he did not.  Standing outside of the vehicle, Deputy Wilson performed a quick plain view search of the vehicle, but failed to locate a weapon.  After identifying the driver as appellant, Deputy Wilson directed him to return to the residence for further investigation.  With Deputy Wilson following closely behind, appellant drove his vehicle back to the residence.  

On the way to the residence, dispatch advised Deputy Wilson that the victim had not been injured in the disturbance and that appellant might have a firearm in his van.  Deputy Wilson then initiated a traffic stop.  As appellant pulled into the circle drive and parked, Deputy Wilson parked his vehicle directly behind appellant’s van.  Sergeant Rauch, another officer responding to the call, pulled into the drive from the opposite direction and parked his cruiser immediately in front of appellant’s vehicle, pinning appellant’s van between the two police cars.  Sergeant Rauch then pulled his weapon and ordered appellant to exit the vehicle 
and step to the rear of the van with Deputy Wilson
.  
While Deputy Wilson frisked appellant for weapons, Sergeant Rauch searched appellant’s van for a weapon.  With the assistance of appellant’s wife, Sergeant Rauch located the gun, and appellant was arrested and charged with unlawfully carrying a firearm.
 

Before trial, appellant filed a motion to suppress the weapon alleging that he had been unlawfully arrested and detained in violation of his state and federal constitutional rights.  Appellant also filed a motion to quash and/or dismiss the information, raising his Second Amendment right to keep and bear arms as a defense to prosecution.  After hearing evidence regarding appellant’s motions, however, the trial court denied both motions.  A jury found appellant guilty as charged, and the trial judge sentenced him to 180 days in jail, probated for fifteen months and a $500 fine.  Appellant then filed two motions for new trial, both of which were overruled by operation of law. 

Investigative Detention or Arrest?

In his fourth point, appellant complains that the trial court erred in overruling his motion to suppress.  In reviewing a trial court’s ruling on a motion to suppress, we give almost total deference to a trial court’s determination of historical facts and review de novo the court’s application of the law of search and seizure.  
State v. Ross
, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing 
Guzman v. State
, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997)); 
Bachick v. State
, 30 S.W.3d 549, 551 (Tex. App.—Fort Worth 2000, pet. ref’d).  In this case, the trial court did not make explicit findings of historical fact, so we review the evidence in a light most favorable to the trial court’s ruling.  
O’Hara v. State
, 27 S.W.3d 548, 550 (Tex. Crim. App. 2000).

Appellant claims that because he was unlawfully arrested before the deputies searched his vehicle, the weapon seized as a result of that search must be suppressed.  
The State asserts, however, that the encounter was merely an investigative detention based on a reasonable suspicion that appellant was involved in an assault and might have a weapon inside his vehicle.  
Thus, we must determine whether appellant’s encounter with the deputies constitutes an arrest or an investigative detention.   

We recognize that not every encounter between a civilian and a police officer is of constitutional dimension.  A police officer may approach a person without probable cause or reasonable suspicion to ask questions or even to request a search.  
Florida v. Royer
, 460 U.S. 491, 497-98, 103 S. Ct. 1319, 1324 (1983); 
Johnson v. State
, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995).  So long as the person remains free to disregard the officer’s questions and go about his business, the encounter is consensual and merits no further constitutional analysis.  
See Johnson
, 912 S.W.2d at 235
.  The constitution is invoked only when the encounter rises to the level of a seizure.  Under both the federal and state constitutions, a person is seized when he yields to an officer’s show of authority under circumstances in which a reasonable person would believe he is not free to leave.
  See id.
 at 236.

The seizure of a person by a police officer may take two forms:  an arrest or a temporary detention for purposes of investigation.  There is no bright-line test to distinguish one from the other.  
Josey v. State
, 981 S.W.2d 831, 839 (Tex. App.—Houston [14
th
 Dist.] 1998, pet. ref’d);
 see also Rhodes v. State
, 945 S.W.2d 115, 118 (Tex. Crim. App.) (stating that handcuffing is not always equivalent to arrest),
 cert. denied
, 522 U.S. 894 (1997)
.  
Whether a particular seizure is an arrest or merely a temporary detention is a matter of degree and turns on such factors as the length of the detention, the amount of force employed, and whether the officer actually conducts an investigation.  
See Woods v. State
, 970 S.W.2d 770, 775 (Tex. App.—Austin 1998, pet. ref’d).

A person is arrested when his liberty of movement is restricted or restrained
 by an officer or person executing a warrant of arrest or without a warrant.  
Tex. Code Crim. Proc. Ann
. art. 15.22 (Vernon 1977); 
Medford v. State
, 13 S.W.3d 769, 772-73 (Tex. Crim. App. 2000)
; 
Amores v. State
, 816 S.W.2d 407, 411 (Tex. Crim. App. 1991).  
Although the term implies an element of detention, custody, or control of the accused, it is not the actual, physical taking into custody that will constitute an arrest. 
 
Medford
, 13 S.W.3d at 772 
(citing 
Smith v. State
, 153 Tex. Crim. 230, 219 S.W.2d 454, 456 (1949)); 
Hardinge v. State
, 500 S.W.2d 870, 873 (Tex. Crim. App. 1973).
  A suspect’s submission to an officer’s show of authority will also constitute an arrest.  
California v. Hodari D
., 499 U.S. 621, 628, 111 S. Ct. 1547, 1551 (1991)
; Medford
, 13 S.W.3d at 773.
 

An investigative detention, on the other hand, occurs when an officer lacks probable cause to arrest but nonetheless possesses a reasonable suspicion; that is, the officer is able to point to specific, articulable facts that, taken together with rational inferences from those facts, reasonably warrant the detention.  
Davis v. State
, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  These facts must amount to more than a mere hunch or suspicion.  
Id
. (citing 
Williams v. State
, 621 S.W.2d 609, 612 (Tex. Crim. App. [Panel Op.] 1981)).  The articulable facts used by the officer must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime.  
Davis
, 947 S.W.2d at 244 (citing 
Meeks v. State
, 653 S.W.2d 6, 12 (Tex. Crim. App. 1983)).  The mere opinion of the officer who detains the suspect, however, does not conclusively determine the nature of the detention.
  See Rhodes v. State
, 913 S.W.2d 242, 247 (Tex. App.—Fort Worth
 
1995) (holding defendant was only temporarily detained even though officer testified he was under arrest)
,
 aff’d, 
945 S.W.2d 115 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 894 (1997); 
see also Amores
, 816 S.W.2d at 411 (holding defendant had been arrested even though officer testified he was only temporarily detained).  

When officers possess reasonable suspicion justifying a temporary investigative detention, they may use such force as is reasonably necessary to effect the goal of the stop:  investigation, maintenance of the status quo, or officer safety.  
Rhodes
, 945 S.W.2d at 117.  Reasonableness must be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight.  
Id. 
at 118.  Allowances must be made for the fact that officers must often make quick decisions under tense, uncertain, and rapidly changing circumstances.  
Id
.  However, if the force utilized exceeds that reasonably necessary to effect the goal of the stop, such force may transform an investigative stop into a full blown arrest.  
See State v. Moore
, 25 S.W.3d 383, 385-86 (Tex. App.—Austin 2000, no pet.) (holding although officer possessed reasonable, articulable facts justifying an investigative stop, handcuffing of suspect constituted excessive force under the circumstances and transformed detention into an arrest, for which the officer did not have probable cause); 
Gordon v. State
, 4 S.W.3d 32, 37 (Tex. App.—El Paso 1999, no pet.) (holding that in the absence of any proof in the record to demonstrate the necessity for the officer’s actions, what may have been a valid investigative detention at the outset became an arrest unsupported by probable cause).

In this case, Deputy Wilson was on his way to a domestic disturbance call when appellant signaled him to stop.  Although Deputy Wilson testified that he would have stopped appellant anyway because appellant’s vehicle met the description of the suspect’s vehicle and was in such close proximity to the residence, the fact remains that appellant signaled the deputy to stop.  At this point in time, appellant concedes and we agree that the interaction amounted to nothing more than an encounter.  
See State v. Perez
, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002); 
Johnson
, 912 S.W.2d at 235.

After Deputy Wilson identified appellant as the suspect, he questioned him about the disturbance and asked him if he had any weapons.  When no weapons were discovered, Deputy Wilson requested that appellant accompany him back to the residence for further investigation.  Appellant contends that at this point the encounter escalated into an arrest because “[a]ppellant’s liberty of movement was restricted.”  Appellant, however, willingly drove his own vehicle back to the residence.
 
 A person who voluntarily accompanies investigating police officers to a certain location, knowing that he is a suspect, has not been seized for Fourth Amendment purposes.  
Anderson v. State
, 932 S.W.2d 502, 505 (Tex. Crim. App. 1996), 
cert. denied
, 521 U.S. 1122 (1997); 
see also
 
Dancy v. State
, 728 S.W.2d 772, 778-79 (Tex. Crim. App.), 
cert. denied
, 484 U.S. 975 (1987).  Therefore, Deputy Wilson’s request that appellant accompany him back to the residence did not constitute an arrest. 

Deputy Wilson then followed appellant back to the residence.  On the way, dispatch notified him that the victim had not been injured and that the suspect might have a weapon.  Deputy Wilson then immediately turned on his overhead lights and initiated a traffic stop.  Because they were so close to the residence, appellant drove a short distance and pulled into the circle drive at the residence.  When he did so, Deputy Wilson and Sergeant Rauch blocked his van in the driveway, ordered him out of the vehicle at gunpoint, and directed him to step to the rear of the vehicle. 

The State characterizes this contact as an investigative detention.  The State also contends that the force used was reasonable because the deputies had a reasonable suspicion that appellant was carrying a weapon inside his vehicle.  We disagree.

The record reveals that Deputy Wilson did not ask appellant any questions during the search of his vehicle.  The deputies did not even question appellant’s wife until after they had located the weapon.  Therefore, this contact could not be characterized as an investigative detention.  
Burkes v. State
, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991) (holding that if the officer conducted no investigation by questioning, the detention cannot be considered investigatory).

Further, at the time dispatch notified Deputy Wilson that appellant might have a weapon, he had already determined that appellant did not have any weapons.  During the initial encounter, he questioned appellant regarding the possession of weapons.  He also peered through the window of the vehicle to see if there were any weapons in plain view.  Satisfied that there were no weapons in the vehicle, he allowed appellant to drive the vehicle back to the residence.  Deputy Wilson did not testify to any furtive gestures or movements made by appellant on the trip back to the residence that would have led him to believe appellant was reaching for a weapon.  So, aside from dispatch’s uncorroborated statement that appellant might have a weapon, Deputy Wilson had no reason to believe that appellant actually possessed a weapon.  Therefore, we conclude that the amount of force utilized by the deputies was not reasonable.  This use of excessive force caused the detention to escalate into an arrest.  Accordingly, we hold that appellant was placed under arrest when the officers blocked his vehicle in the driveway, ordered him out of the vehicle at gunpoint, and ordered him to the rear of his vehicle.  
See Hoag v. State
, 728 S.W.2d 375, 379 (Tex. Crim. App. 1987). 

Was the Warrantless Arrest Lawful?

Next, we must determine whether appellant’s warrantless arrest was lawful.  The trial court seems to have relied on the officer’s location of the weapon as the basis for probable cause to arrest appellant for an offense committed in the officer’s presence.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 14.01(b) (authorizing warrantless arrest by peace officer for offense committed in his presence or within his view).  However, given our holding that appellant was arrested before the officer found the weapon, the location of the weapon obviously cannot serve to support probable cause for the arrest.  Thus, the only basis upon which the officer could have arrested appellant is on the available facts and circumstances respecting the alleged commission of an assault.

In Texas, a police officer may only arrest an individual without a warrant if (a) there is probable cause with respect to that individual, and (b) the arrest falls within one of the exceptions specified in the Texas Code of Criminal Procedure.  
Id. 
arts. 14.01-.04 (Vernon 1977 & Supp. 2003); 
Lunde v. State
, 736 S.W.2d 665, 666 (Tex. Crim. App. 1987).  For an officer to effect a warrantless arrest for an assault, the assault must either occur in the officer’s presence or view or the officer must have probable cause to believe that the assault resulted in bodily injury to a member of the suspect’s family or household.  
Tex. Code Crim. Proc. Ann. 
arts. 14.01(a), 14.03(a)(4).  

Here, based on the 9-1-1 call and Deputy Wilson’s encounter with appellant, Deputy Wilson had probable cause to believe that appellant had been involved in the domestic disturbance.  The alleged assault, however, did not occur in his presence or view.  Further, before arriving at the residence, Deputy Wilson was informed that the victim had not suffered bodily injury.  Therefore, absent a warrant, the deputies could not lawfully arrest appellant for assault.  
Id
. art. 14.03(a)(4).

Was the Search of Appellant’s Vehicle Lawful?

The State also contends that the search of appellant’s vehicle was legal because it was based on the deputies’ reasonable suspicion that appellant had a weapon inside the vehicle.  Having concluded, however, that appellant was illegally arrested before the deputies searched his vehicle, we also hold that the search of appellant’s van was unlawful.  A search of a vehicle for weapons is only authorized where the circumstances are such that a reasonably prudent person would justifiably believe that his safety or the safety of others is in danger.  
Michigan v. Long
, 463 U.S. 1032, 1050-51, 103 S. Ct. 3469, 3481-82 (1983);
 O’Hara
, 27 S.W.3d at 551; 
Worthey v. State
, 805 S.W.2d 435, 438 (Tex. Crim. App. 1991).  As stated above, Deputy Wilson had concluded that appellant did not pose a threat to his safety or the safety of others before he allowed him to drive his own vehicle back to the residence.  Although officers can sometimes rely on police broadcasts to establish reasonable suspicion, Deputy Wilson had already dispelled his suspicions regarding a weapon before the police broadcast was aired.  
See Dowler v. State
, 44 S.W.3d 666, 669-70 (Tex. App.—Austin 2001, pet. denied) (holding that officers may rely on police broadcast to establish probable cause if the information known to the officer making the broadcast request is sufficient to establish probable cause)
.  
There is no evidence in the record to suggest that appellant made any furtive movements or gestures on the drive back to his residence that would have rekindled Deputy Wilson’s suspicion.  In addition, Deputy Wilson had no reason to believe that a weapon had been used in the disturbance.  Therefore, because Wilson did not have a reason to suspect that appellant had a weapon in his vehicle, the deputies could not legally perform a search of the vehicle for weapons.  

Additionally, because the arrest was not legal, the search cannot be upheld as a search incident to a lawful arrest.  Therefore, we hold that the trial court abused its discretion by denying appellant’s motion to suppress.  

Even though reversal is required on this ground, constitutional protections against double jeopardy demand that we continue our analysis because appellant has also complained that the evidence is legally insufficient to support his conviction.  
Tex. Code Crim. Proc. Ann. 
art. 1.11 (Vernon 1977); 
see also McFarland v. State
, 930 S.W.2d 99, 100 (Tex. Crim. App. 1996) (stating that appellate court must always address sufficiency challenges, “even if the conviction must be reversed on other grounds”).  

Sufficiency of the Evidence

In his first and second points, appellant contends that the evidence is insufficient to prove that he possessed the requisite mental state for the offense charged. 

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

The charging instrument in this case alleges that appellant intentionally, knowingly, or recklessly carried a handgun on or about his person in violation of section 46.02 of the penal code.  
See
 Tex. Penal Code Ann.
 § 46.02(a) (Vernon 2003).  According to the penal code, a person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.  
Id
. 
§ 6.03(a).  A person acts knowingly when the person is aware of the nature of his conduct or that the circumstances exist or is aware that his conduct is reasonably certain to cause the result.  
Id
. § 6.03(b)
.  
A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.  
Id.
 § 6.03(c).  Thus, to find a defendant guilty of the offense of unlawfully carrying a weapon, the evidence, at a minimum, must establish that the defendant was aware that the handgun was inside the vehicle.  
Id
. § 6.03.  

In the present case, appellant was alone in the van at the time the weapon was found. 
 The record reveals, however, that he did not have exclusive control over the vehicle.  Both appellant and his wife had access to the van.  Appellant’s wife, Laura Stebbins McCraw, testified that he usually drove the Land Cruiser; not the van.  Further, the evidence also reveals that, on the day of the disturbance, Laura was alone outside of their residence for a period of time.  Appellant testified that he did not know what she was doing or how long she stayed outside.  

Although Laura stated that appellant always carried a gun in his vehicle, appellant and other witnesses testified that he only carried a weapon in the vehicle when he went hunting.  Only one person, aside from appellant’s wife testified to having seen a weapon inside appellant’s vehicle at a time when appellant was not on a hunting trip.  Appellant’s neighbor stated that he had seen a weapon inside the Land Cruiser while it was parked inside of appellant’s garage.  The neighbor’s testimony, however, also revealed that his relationship with appellant was strained, and that appellant had previously filed disorderly conduct charges against him.  Appellant admitted that he had shown the neighbor a weapon, but stated that he had done so during hunting season.

Laura also testified that appellant owned many guns and that she did not like guns.
  Her testimony, however, revealed that she had a concealed handgun license.  When asked, she could not say whether or not the gun found in the van was the same gun she had used to qualify for her concealed handgun license.  Appellant testified, however, that this gun was the same gun that she had used.  The last time he had seen the weapon was after she completed the handgun course.  At that time, appellant cleaned the weapon and placed it under the mattress. 

Further, the weapon was not located in plain view.  Appellant’s wife had to tell the deputies where to locate the gun.  Sergeant Rauch then found the gun hidden in the console of the vehicle under the cup holder.  When confronted with the weapon, appellant told the deputies that he did not know how the gun got in the van.  Although Sergeant Rauch testified that the look on appellant’s face indicated to him that appellant knew the gun was inside the vehicle, Deputy Wilson stated that appellant seemed surprised when they located the weapon.  At one point, Deputy Wilson even said that he did not think appellant knew that the gun was in the van.  Testimony also revealed that the weapon seized was a collector’s gun, and that it was unlikely that appellant would have placed this weapon into the console without putting it into a holster. 

Therefore, based on the record in this case, we hold that the evidence is legally insufficient to show that appellant was aware that the weapon was inside the vehicle.  Accordingly, 
we reverse the judgment of the trial court and render a judgment of acquittal.
(footnote: 1)

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

PUBLISH

DELIVERED: July 3, 2003

FOOTNOTES
1:
In light of our holding on this issue, we need not address appellant’s contention that the prosecutor engaged in improper jury argument.  
See
 
Tex. R. App. P.
 47.1.