# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00433-CR

**Stephen Mark Hurley, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT**
**NO. D-1-DC-05-206188, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Stephen Mark Hurley appeals his judgment of conviction for felony driving while intoxicated enhanced by a prior conviction for possession of a controlled substance. Following his waiver of trial by jury, appellant entered pleas of "guilty" and "true." The trial court assessed punishment at five years' imprisonment.

### POINT OF ERROR

In his sole point of error, appellant advances the contention that the "trial court erred in denying the motion to suppress because there was a detention not a mere encounter." Actually, there were two motions to suppress, one to suppress statements made to the arresting officer, and

another to suppress evidence resulting from an illegal detention, search and seizure. Both were overruled by the trial court at a pretrial hearing.[1]

## BACKGROUND

The only court reporter's record (statement of facts) before this court is the pretrial hearing on the motions to suppress. *See* Tex. Code Crim. Proc. Ann. art. 28.01(6) (West 2006). The only witness to testify at the hearing was the arresting officer, John Paul Clauch, a former trooper with the Texas Department of Public Safety ("DPS").

Officer Clauch testified that on November 30, 2005, he was patrolling on State Highway 71 in Travis County. His general duty was traffic law enforcement. At about 3:10 p.m. that afternoon, Officer Clauch observed a Ford Taurus parked on the side of State Highway 71, partially on the paved or improved shoulder and partially on the unimproved shoulder of dirt and gravel. Officer Clauch explained that he stopped his patrol vehicle behind the Ford Taurus. He stated that he acted in accordance with the DPS's motor assist policy; requiring an officer in a marked police vehicle, who observes a motor vehicle on the side of the road, whether the vehicle was occupied or not, "to stop and check by and make sure everything was okay."[2] He felt the policy was based on "common sense and good judgment."

---

[1] Appellant in his sole point of error has not addressed or briefed the admissibility of various statements made by appellant to Officer John Paul Clauch. *See* Tex. R. App. P. 38.1(h). Therefore, nothing is presented on appeal as a result of the trial court's ruling on these statements.

[2] Officer Clauch related that the motor assist policy was in some respects discretionary with the officer. It did not apply on all occasions.

Officer Clauch related that when he stopped his patrol vehicle, its rear flashing lights, camera, and "mike" came on automatically. The rear lights are not visible from the front of the vehicle. Officer Clauch stated that the automatic activation of the flashing rear lights was for safety.[3] There was heavy motor vehicle traffic on State Highway 71 at that time of the afternoon. As Officer Clauch approached the parked Taurus vehicle, he heard the engine running and saw one individual in the car. He did not observe any damage to the Taurus, flat tires, or other matters interfering with the operation of the vehicle. He saw no signs of distress.

Officer Clauch testified that the Taurus was not illegally parked, nor did he see other violations of the law when he stopped his vehicle to inquire if assistance was needed.

Officer Clauch, on cross-examination, testified that he wanted to talk to the occupant of the Taurus who was not free to drive away, but added: ". . . I mean I needed to go up and approach him and make sure everything was okay, if that is what your question is." The officer then made clear that the occupant was free to leave and would have been allowed to drive off.

Officer Clauch testified that when he reached the Taurus, the occupant, whom he identified as appellant, was "passed out" in the driver's seat with the engine still running. The doors were locked except the driver's door. The officer tried unsuccessfully to talk to appellant, asking, "Is everything all right?" The officer tried twice to wake appellant before appellant awaken. Officer Clauch described appellant's physical appearance as "pretty droopy, heavy eyelids, red eyes" and stated that appellant's movements were slow and uncoordinated. An odor of alcohol emanated

---

[3] Officer Clauch stated that the rear flashing lights are "to alert anybody coming up behind me that I am on the side of the road outside the vehicle."

3

from the Taurus. Appellant was asked to get out of the car. At this point, Officer Clauch stated that he was trying to confirm that appellant was "okay," because appellant was not responding at all to the officer's questions. Upon exiting the Taurus, appellant's movements were unbalanced and uncoordinated. There was a urine stain on appellant's pants.

After appellant began to answer some preliminary questions, Officer Clauch had appellant attempt to perform some field sobriety tests. The officer later told the trial court that he decided to arrest appellant for driving while intoxicated because appellant told him that he (appellant) had had a lot to drink. There were open wine bottles in the back seat of the Taurus. Appellant's performance on the field sobriety tests was poor, and he had red eyes, slurred speech, and an extremely strong odor of alcohol on his breath.

When asked whether appellant answered any questions or made any statements to the officer during the reading of the *Miranda* warnings, Officer Clauch replied, "No ma'am, he just told me I love you and I'm sorry."

At the conclusion of the pretrial hearing on December 4, 2006, the trial court took the matter under advisement, asking the parties to provide additional legal authority. On March 1, 2007, the trial court overruled the suppression motions. No findings of fact or conclusions of law were filed.

In his sole point of error, appellant complains that the trial court erred in overruling the motions to suppress evidence "because there was a detention and not a mere encounter." Apparently, appellant means that his detention was without a reasonable suspicion of involvement in criminal activity.

4

## STANDARD OF REVIEW

Generally, we review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Dyar v. State*, 125 S.W.3d 460, 462 (Tex. Crim. App. 2003). We view a trial court's ruling on a suppression motion under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In our review, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). Therefore, we give almost total deference to the trial court's rulings on historical facts as well as application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). When, however, the trial court rules on mixed questions of law and fact that do not depend on the credibility and demeanor of witnesses, we review its rulings *de novo*. *Id*. Questions of probable cause and reasonable suspicion are reviewed *de novo*. *See Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *Franks v. State*, 241 S.W.3d 135, 140-41 (Tex. App.—Austin 2007, pet. ref'd).

When, as here, the trial court does not enter findings of fact or conclusions of law, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling so long as those findings are supported by the record. *Wiede*, 214 S.W.3d at 25; *Ross*, 32 S.W.3d at 855; *Carmouche*, 10 S.W.3d at 328. If the ruling on the suppression motion is reasonably supported by the record and is correct under

any theory of the law applicable to the case, the ruling will be upheld. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002); *Romero*, 800 S.W.2d at 543; *Franks*, 241 S.W.3d at 141.

The real suppression issue here is the initial contact between Officer Clauch and appellant. The question of whether a given set of historical facts amount to a consensual police-citizen encounter or a detention [and seizure] under the Fourth Amendment is subject to *de novo* review because that is an issue of law—the application of legal principles to a specific set of facts. *State v. Garcia-Cantu*, Nos. PD-0936-07 & PD-0937-07, 2008 Tex. Crim. App. LEXIS 581 at \*11 (Tex. Crim. App. May 7, 2008).

## THREE CATEGORIES OF INTERACTIONS

Both the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution protect individuals from unreasonable searches and seizures. *See* U.S. Const. amend. IV; Tex. Const. art. 1, § 9. Appellant here makes no claim that the Texas constitutional provision affords him greater protection than its federal constitutional counterpart. Therefore, we treat them jointly as providing the same protection. *See Johnson v. State*, 912 S.W.2d 227, 233-34 (Tex. Crim. App. 1995).

The Texas Court of Criminal Appeals has recognized the following three categories of interactions between police officers and citizens: (1) encounters, (2) investigative detentions, and (3) arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002); *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996); *State v. Bryant*, 161 S.W.3d 758, 761 (Tex. App.—Fort Worth 2005, no pet.).

6

For an arrest to be justified under the Fourth Amendment, it must be accompanied by probable cause to believe that a person has engaged in or is engaging in criminal activity. *See Henry v. United States*, 361 U.S. 98, 102 (1959). A person is arrested when his liberty of movement is restricted or restrained by an officer or by a person executing a warrant of arrest or arresting without a warrant. Tex. Code Crim. Proc. Ann. art. 15.22 (West 2005); *Medford v. State*, 13 S.W.3d 769, 772-73 (Tex. Crim. App. 2000). The constitution is invoked only when the "encounter" rises to the level of the seizure of a person. *McCraw v. State*, 117 S.W.3d 47, 51 (Tex. App.—Fort Worth 2003, pet. ref'd). Both arrests and temporary investigative detentions involve seizures without a bright-line distinction between them. *Josey v. State*, 981 S.W.2d 831, 839 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). Sometimes the distinction is a matter of degree and involves different factors. *McCraw*, 117 S.W.3d at 52.

A detention may be justified on circumstances less than probable cause. *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989); *Bryant*, 161 S.W.3d at 760. A stop is deemed an investigative detention when a law enforcement officer detains a person reasonably suspected of criminal activity to determine the person's identity or to momentarily maintain the status quo to garner more information. *See Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987). A temporary detention is justified when the detaining officer has specific, articulable facts which, taken together with rational inferences from other facts, lead him to conclude the person detained is, has been, or soon will be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). The facts must amount to more than a mere hunch or suspicion.

7

*Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). An investigative detention occurs when an individual is confronted by a police officer, yields to the officer's display of authority and is temporarily detained for the purpose of investigation. *Johnson*, 912 S.W.2d at 235. Whether reasonable suspicion exists is determined by considering the facts known to the officer at the time of the detention. *Terry*, 392 U.S. at 21-22; *Franks*, 241 S.W.3d at 141. A reasonable suspicion determination is made by considering the totality of the circumstances. *Ford*, 158 S.W.3d at 492-93. An investigative detention must last no longer than necessary to effectuate the purpose of the stop and must involve actual investigation. *Akins v. State*, 202 S.W.3d 879, 885 (Tex. App.—Fort Worth 2006, pet. ref'd).

Detentions are distinct from encounters. Encounters are consensual interactions between citizens and police that do not require reasonable suspicion and do not implicate constitutional rights. *See Florida v. Royer*, 460 U.S. 491, 497-98 (1983); *Franks*, 241 S.W.3d at 141. An encounters occurs when a police officer approaches an individual in a public place to ask questions, request identification or request consent to search as long as the interaction is consensual—that is, as long as the officer does not convey a message that compliance with the officer's request is required. *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991). Encounters do not require any justification on the part of an officer. *Harper v. State*, 217 S.W.3d 672, 674 (Tex. App.—Amarillo 2007, no pet.). Encounters are consensual if a "reasonable person would feel free to disregard the police and go about his business." *California v. Hodari D.*, 499 U.S. 621, 628 (1991); *see also Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997) (an encounter is a consensual interaction which the citizen is free to terminate at any time). Therefore, an encounter

8

is not considered a seizure for Fourth Amendment purposes and does not warrant constitutional analysis. *Hunter*, 955 S.W.2d at 104; *McCraw v. State*, 117 S.W.3d at 51. "[E]ncounters between citizens and police officers are incredibly rich in diversity." *Garcia-Cantu*, 2008 Tex. Crim. App. LEXIS 581 at *12 (quoting *Terry*, 392 U.S. at 13).

In *State v. Bryant*, 161 S.W.3d at 762, it was held that a police officer was not required to have reasonable suspicion that a defendant was engaged in criminal activity to approach the defendant's car and knock on the window. The interaction did not become an investigative detention until after the defendant opened his car door and the officer smelled the odor of alcohol. In *Merideth v. State*, a police officer approached a parked truck in which Merideth and his female companion were sitting. 603 S.W.2d 872, 873 (Tex. Crim. App. 1980). Unable to see through the rear window, the officer went to the driver's door and knocked on the window. *Id*. When Merideth opened the door, the officer smelled marihuana smoke and saw a hand-rolled cigarette butt in the ashtray. *Id*. It was held that the interaction did not become an investigative detention until the officer discovered the marihuana. *Id*.

In *Perez*, 85 S.W.3d at 818, a police officer received a theft report from the dispatcher, drove north until he spotted Perez, and slowed his police vehicle to determine if Perez matched the suspect's description as given. When Perez observed the officer looking at him, he ran into a nearby apartment. The officer knocked on the apartment door, Perez answered, and the officer smelled the odor of marihuana. The Court of Criminal Appeals held that until that point, the interaction was a consensual encounter, not an investigative detention. *Id*. at 819; *see also State*

9

*v. Carranza*, 162 S.W.3d 407, 409 (Tex. App.—Beaumont 2005, pet. ref'd) (officer not required to have reasonable suspicion to knock on a hotel door).

In *Garcia-Cantu*, 2008 Tex. Crim. App. LEXIS 581 at *15-16, the court stated:

> Police officers are as free as any other citizen to knock on someone's door and ask to talk with them, to approach citizens on the street or in their cars and to ask for information or their cooperation. Police officers may be as aggressive as the pushy Fuller-brush man at the front door, the insistent panhandler on the street, or the grimacing street-corner car-window squeegee man. All of these social interactions may involve embarrassment and inconvenience, but they do not involve official coercion. It is only when the police officer "engages in conduct which a reasonable man would view as threatening or offensive even if performed by another private citizen," [that] such an encounter become[s] a seizure. It is the display of official authority and the implication that this authority cannot be ignored, avoided, or terminated, that results in a Fourth Amendment seizure. At bottom, the issue is whether the surroundings and the words or actions of the officer and his associates communicate the message of "We Who Must Be Obeyed."

(citations omitted). In *Garcia-Cantu*, the Texas Court of Criminal Appeals discussed the distinction between an encounter and an investigative detention. Under the totality of the circumstances, the court concluded that there was an investigative detention and a seizure rather than a mere encounter. *Id*. at *19-24.

**CONCLUSION**

In the instant case, the evidence shows an encounter between the officer and appellant which, as the facts developed, became a temporary investigative detention and later escalated into an arrest of appellant based on probable cause. The facts do not need to be reiterated.

Viewing the totality of the circumstances in the light most favorable to the trial court's ruling, we conclude that the trial court did not abuse its discretion in denying the motion to

10

suppress by finding that the initial contact between the officer and appellant was an encounter. The only issue before us was the legality of the initial contact. The sole point of error is overruled.

The judgment of conviction is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Pemberton, Waldrop and Onion*

Affirmed

Filed: June 26, 2008

Do Not Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).