Affirmed and Memorandum Opinion filed July 1, 2008








Affirmed
and Memorandum Opinion filed July 1, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00301-CR

____________

 

JOHN BYRON SIMMONS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 10

Harris County, Texas

Trial Court Cause No. 1383534

 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant, John Byron Simmons, of the
misdemeanor offense of driving while intoxicated.  The trial court sentenced
him to 180 days= confinement in the Harris County Jail,
probated for one year, a $350 fine, and thirty hours of community service.  In
his sole issue on appeal, appellant contends that the trial court erred by
admitting into evidence custodial statements obtained in violation of Miranda
v. Arizona.[1] 
We affirm.








Factual
And Procedural Background

On June 15, 2006, at approximately two o=clock in the
morning, Kenneth Street discovered appellant parked across two lanes of traffic
near the intersection of Westheimer and Kirkwood.  According to Street=s testimony,
appellant=s car was blocking his vehicle from proceeding, so
Street stopped about fifty to sixty feet from appellant=s car and honked
his horn. When appellant failed to respond, Street flashed his lights and
honked again.  Appellant eventually responded by yelling an obscenity.  Street
then asked whether appellant was okay and told him to move his car.  Appellant
failed to do so and instead continued shouting obscenities at Street.  Street
then drove around appellant=s vehicle, pulled into the parking lot of
a nearby Jack-in-the-Box restaurant, and entered the drive-through line to
purchase food.

Appellant followed Street into the Jack-in-the-Box parking
lot.  Once there, appellant stepped outside his car and continued shouting at
Street, challenging him to get out of his vehicle.  Street testified that
appellant appeared to be Aextremely intoxicated,@ that appellant
almost fell down while getting out of his car, that appellant could barely
maintain his balance once he exited his car, and that he was slurring his
speech.  At this point, Street called the police and reported the incident.  Before
the police arrived, appellant entered the drive-through line several cars
behind Street, also to purchase food.

Officers Paul Villanueva and Damon Jensen of the Houston
Police Department responded to the dispatch, which instructed them to go to the
Jack-in-the-Box parking lot for what Officer Villanueva testified was a Atelephoned report
of a DWI call.@  Upon their arrival, Officers Villanueva and Jensen
met with Street.  He gave the officers a brief account of the incident and
identified appellant=s car, which at this point was at the
drive-through window.  As appellant was about to exit the parking lot, Officer
Villanueva activated his emergency lights and drove in front of appellant=s vehicle,
blocking his exit.








Officers Villanueva and Jensen then approached appellant=s car and ordered
him to get out of the vehicle.  They took appellant beside their patrol car and
began to interview him concerning the incident with Street.  Both officers
testified that appellant emitted a strong odor of alcohol, that his eyes were
bloodshot, and that his speech was slurred.  Based on appellant=s responses and
their own observations, Officers Villanueva and Jensen called for a DWI task
force officer to administer field sobriety tests.  Neither Villanueva nor
Jensen performed any kind of field sobriety tests on appellant.  While awaiting
the arrival of the task force officer, they placed appellantCunhandcuffedCin the back of
their patrol car.

Approximately ten to fifteen minutes later, Officer Melody
Pritchard of the DWI task force arrived at the scene.  After making contact
with Officers Villanueva and Jensen, Officer Pritchard administered four field
sobriety tests to appellant, which she recorded on video.[2] 
Before administering the field sobriety tests, Officer Pritchard asked
appellant whether he had consumed any alcohol that evening, and appellant
responded that he had drunk three or four beers.  Officer Pritchard=s questions and
appellant=s responses were also captured on video.  Based upon
appellant=s performance on the field sobriety tests, Officer
Pritchard determined that appellant was intoxicated.  The officers then Atook him into
custody and placed him under arrest.@








Appellant was subsequently charged with the misdemeanor
offense of driving while intoxicated.  He pleaded not guilty and requested a
jury trial.  During trial, the State sought to introduce into evidence the
videotape of appellant=s field sobriety tests, which included
appellant=s statements regarding his consumption of
alcohol and the quantity of drinks consumed.  Appellant contended that he was Ain custody@ following his
detention by Officers Villanueva and Jensen.  He objected that without being
given Miranda warnings, his statements on the video were the product of
custodial interrogation and therefore inadmissible.  After an in camera
inspection, the trial court overruled appellant=s objection and
admitted the videotape into evidence.  The jury later found appellant guilty of
driving while intoxicated, and the trial court sentenced him to 180 days= confinement in
the Harris County Jail, probated for one year, a $350 fine, and thirty hours of
community service.  This appeal followed.

Issue
on Appeal

In his sole issue on appeal, appellant contends that the
trial court erred in admitting into evidence his videotaped statements regarding
his consumption of alcohol and the quantity of drinks consumed.  Appellant
asserts that, because Officers Villanueva and Jensen (1) blocked in his
vehicle; (2) removed him from his vehicle and questioned him; and (3) placed
him in the back seat of their patrol car to await the arrival of the DWI task
force officer, he was Asufficiently restrained of his liberty@ and therefore Ain custody@ for Miranda purposes. 
Appellant argues that, because he was in custody at the time he was questioned
by Officer Pritchard, his statements on the video were the product of custodial
interrogation and therefore inadmissible in the absence of Miranda warnings. 
Appellant further argues that the trial court=s error is
constitutional error, and urges us to reverse his conviction and remand the
cause for a new trial.








Conversely, the State contends that the trial judge
properly admitted appellant=s videotaped statements regarding his
consumption of alcohol and the quantity of drinks consumed.  The State asserts
that appellant was not under arrest when he made the statements; instead, he
was subject to an on-going investigative detention.  The State argues that,
because appellant was not Ain custody@ for the purposes
of Miranda, Officer Pritchard was not required to Mirandize him
before questioning him.  The State further argues that appellant=s videotaped
statements were therefore admissible, and that even if the trial court erred in
admitting the statements, the error was harmless because the record is Areplete with other
evidence@ establishing that
appellant Adrank several beers@ that night.

Because we agree with the State that appellant was not Ain custody@ for the purposes
of Miranda when Officer Pritchard questioned him, we conclude that his
videotaped statements regarding the consumption of alcohol and the quantity of
drinks consumed were admissible.  Thus, the trial court did not err in
admitting appellant=s videotaped statements into evidence.  We
overrule appellant=s sole issue.

Analysis
of Appellant=s Issue

A.      Standard of
Review and Applicable Law

We review a trial court=s ruling on the
admissibility of evidence for an abuse of discretion. Casey v. State,
215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  A trial court abuses its
discretion when its decision lies outside the zone of reasonable disagreement. Id.
(citing Green v. State, 934 S.W.2d 92, 101B02 (Tex. Crim.
App. 1996)).  In conducting our review, we give almost total deference to the
trial court=s factual determinations; however, we review de
novo the trial court=s application of the law of search and
seizure. See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
We will uphold the trial court=s ruling if it is reasonably supported by
the record and is correct under any theory of law applicable to the case.  See
Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).








Interactions between police and civilians are divided into
three categories: (1) consensual encounters[3];
(2) investigative detentions; and (3) arrests. See Mount v. State, 217
S.W.3d 716, 724 (Tex. App.CHouston [14th Dist.] 2007, no pet.).  All three categories involve
attendant rights and responsibilities.  Josey v. State, 981 S.W.2d 831,
839 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d).

An
investigative detention occurs when an individual is confronted by a law
enforcement officer who, under a display of law enforcement authority,
temporarily detains the person for purposes of an investigation.  See State v. Garcia, 25 S.W.3d 908,
911 (Tex. App.CHouston [14th Dist.] 2000, no pet.) (citing Johnson
v. State, 912 S.W.2d 227, 235 (Tex. Crim. App.1995)).  While an investigative detention is
considered a Aseizure,@ it is
characterized by lesser restraint than an arrest. See Berkemer v. McCarty,
468 U.S. 420, 438B40 (1984); Francis v. State, 922
S.W.2d 176, 178 (Tex. Crim. App. 1996) (stating that an investigative detention
is a seizure).  Furthermore, and more importantly, persons temporarily detained
for the purposes of an investigation are not Ain custody@ for the purposes
of Miranda, and the right to Miranda warnings is not triggered
during an investigative detention. See Berkemer, 468 U.S. at 438B40; Arthur v.
State, 216 S.W.3d 50, 56, 58 (Tex. App.CFort Worth 2007,
no pet.) (citing Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App.
1996)); see also Hernandez v. State, 107 S.W.3d 41, 47B48 (Tex. App.CSan Antonio 2003,
pet. ref=d) (concluding
that appellant=s statement that he had consumed nine beers was made
during investigatory detentionCprior to full custodial arrestCand therefore Miranda
warnings were not required).

The third level of interaction, an arrest, is also a
seizure. Francis, 922 S.W.2d at 179. Under Texas law, an arrest occurs when A[a] person . . . has been actually
placed under restraint or taken into custody by an officer or person executing
a warrant of arrest, or by an officer or person arresting without a warrant.@ See Tex. Code Crim. Proc. art. 15.22.  If an individual is subjected to questioning while in
custody without first being warned of his Miranda rights and without
voluntarily waiving those rights, then any evidence obtained as a result of
that questioning is inadmissible at trial.  See Miranda, 384 U.S. at
479; see also Hernandez, 107 S.W.3d at 47.  








Thus, with regard to
the admissibility of evidence, the protections of Miranda only apply
when an individual is Ain custody.@ See Miranda,
384 U.S. at 479 (explaining that an individual must receive the appropriate
warnings when he Ais taken into custody or otherwise
deprived of his freedom by the authorities in any significant way@).  In other
words, Miranda applies only when an individual is under arrest. See
Stansbury v. California, 511 U.S. 318, 322 (1994) (explaining that, for purposes of Miranda,
an individual is Ain custody@ when he is placed under formal arrest or his freedom of
movement has been restrained to the degree associated with a formal arrest).  Therefore, to
determine whether Miranda warnings were required in this caseCand whether
appellant=s videotaped statements were admissible at trialCwe must determine
whether, at the time the statements were made, appellant was under arrest, or
whether he was merely subject to an investigative detention.  

To determine whether an interaction is an arrest or an
investigative detention, we employ a multi-factor test, and examine (1) the
length of the detention; (2) the amount of force employed; and (3) whether the
officers actually conduct an investigation.  See Mount, 217 S.W.3d at
724.  We consider the totality of the circumstances, and look to the beginning
of the officers= intrusion and evaluate the reasonableness
of each incremental level of intrusion based on the information the officers
possessed at that time. See Josey, 981 S.W.2d at 839; see also Mount,
217 S.W.3d at 724 (citing Rhodes v. State, 945 S.W.2d 115, 118
(Tex. Crim. App. 1997)) (stating that whether a detention is an actual arrest
or an investigative detention depends upon the reasonableness of the intrusion
under all of the facts).  We now turn to appellant=s specific
arguments.

B.      Application
of Law to the Facts








Appellant contends that the means by which Officers
Villanueva and Jensen confronted  him in the Jack-in-the-Box parking lotCspecifically by
blocking his vehicle in the drive-through line, removing him from his car and
questioning him, and placing him in the back seat of their patrol carCAsufficiently
restrained [him] of his liberty to characterize the encounter as an arrest.@  Appellant
emphasizes the fact that his vehicle was blocked in by the officers= patrol car, which
had its emergency equipment activated, and cites three cases in support of his
argument that the means by which the officers restrained him rendered the
interaction an arrest.  See McCraw v. State, 117 S.W.3d 47, 54 (Tex.
App.CFort Worth 2003,
pet. ref=d); Villalobos
v. State, 999 S.W.2d 132, 134B35 (Tex. App.CEl Paso 1999, no
pet.); Taylor v. State, 874 S.W.2d 362, 365 (Tex. App.CFort Worth 1994,
no pet.).

Conversely, the State contends that the circumstances of
the interaction between appellant and Officers Villanueva and Jensen remained
within the bounds of an investigative detention, rather than an arrest.  The
State asserts that, based on Street=s personal account
of appellant=s conduct, Officers Villanueva and Jensen acquired
reasonable suspicion to detain appellant.  The State argues that the officers= method of
initiating the stop was reasonable, considering that appellant was about to
drive onto a public street.  The State further asserts that, once appellant was
detained, Officers Villanueva and Jensen immediately began interviewing him and
noticed signs of intoxication, thus indicating that the officers were actually
conducting an investigation rather than effectuating an arrest.  Finally, the
State argues that the particulars of the interaction between appellant and
Officers VillanuevaCthat appellant=s car was blocked
in, that appellant was removed from his vehicle and questioned, and that
appellant was placed in the back of the patrol carCdid not elevate
the investigative detention to an arrest.  We agree with the State.








During an investigative detention, an officer may employ
the force reasonably necessary to effect the goal of the detention: 
investigation, maintenance of the status quo, or officer safety. Mount,
217 S.W.3d at 724.  However, if the force utilized exceeds that reasonably
necessary to effect the goal of the stop, the force may then transform an
investigative detention into a full-blown arrest. Id. at 724B25. 
Reasonableness must be judged from the perspective of a reasonable officer at
the scene, rather than with the advantage of hindsight, and allowances must be
made for the fact that officers must often make quick decisions under tense,
uncertain, and rapidly-changing circumstances. Id. at 725.  Additional
factors to consider include the officer=s opinion of
whether the stop was an investigative detention or an arrest, and whether the
officers actually conducted an investigation after seizing the suspect. See
id.  Above all, in our evaluation of reasonableness, Acommon sense and
ordinary human experience must govern over rigid criteria.@ See Rhodes,
945 S.W.2d at 118. 

Based on the totality of the circumstances, we conclude
that, at the time his statements were made, appellant was subject to an
investigative detention, and was not under arrest.  Each level of the officers= intrusion was
reasonable under the circumstances.  We will address each in turn, examining
the appropriate factors.

1.       Blocking-In
Appellant=s Vehicle Did Not Render the
Interaction an Arrest.

First, the means by which Officers Villanueva and Jensen
initially confronted appellant in the Jack-in-the-Box parking lot, by
activating their emergency equipment and blocking appellant=s vehicle in the
drive-through line, did not in and of itself render the interaction an arrest. 
The officers= decision to block appellant=s vehicle was
reasonably necessary to effect the goal of the detention:  to safely
investigate the information provided by Street that appellant may have been
driving while intoxicated. See Mount, 217 S.W.3d at 726B27 (concluding
that officers= blocking of appellant=s car, removing
him at gunpoint, then conducting field sobriety tests was reasonable under the
circumstances and amounted only to an investigative detention); see also
Rhodes, 945 S.W.2d at 117 (stating that boxing in a suspect=s car and drawing
weapons does not automatically convert an investigative detention into an
arrest).








Upon their arrival at the scene, Officers Villanueva and
Jensen gathered information from Street regarding the incident involving
appellant.  Minutes later, when Officers Villanueva and Jensen noticed
appellant=s car beginning to exit the drive-through, the
officers made the sudden decision to block his car from exiting because, in
Officer Jensen=s words, Awe didn=t want to take a
chance of it possibly getting out on the street and causing harm.@  From the
perspective of a reasonable officer at the scene, and under these
rapidly-changing circumstances, we find that the officers= decision to block
appellant=s car was reasonable, and did not exceed the force
reasonably necessary to effect the goal of the stop.  See Green v. State,
No. 14-03-00213-CR, 2004 WL 1381021, at *4B5 (Tex. App.CHouston [14th
Dist.] June 22, 2004, pet. ref=d) (mem. op., not designated for
publication) (concluding that appellant was not under arrest when officer
blocked his vehicle and approached him with his service revolver drawn; officer
noticed appellant=s car leaving the scene and actions were
reasonable to protect officer safety).

Furthermore, the cases cited by appellant are
distinguishable.  See McCraw, 117 S.W.3d at 54; Villalobos, 999
S.W.2d at 134B35; Taylor, 874 S.W.2d at 365.  In McCraw,
police officers blocked the defendant=s vehicle in the
driveway of his home and ordered him out of the vehicle at gunpoint while they
searched the vehicle for a firearm. McCraw, 117 S.W.3d at 53.  However,
the officers neither questioned the defendant during the search of his vehicle,
nor questioned his wife until after locating the weapon.  Id.  The court
concluded that, because the officers never questioned appellant or otherwise
conducted an investigation during the search of the vehicle, the contact could
not be characterized as an investigative detention. Id.








Similarly, in Villalobos, police officers blocked
the defendant=s vehicle, ordered him out of the vehicle, and patted
him down without questioning him. Villalobos, 999 S.W.2d at 135.  The
court held that these actions constituted a custodial arrest, rather than an
investigative detention. See id. at 134B35.  However, here
the record demonstratesCand the parties concedeCthat Officers
Villanueva and Jensen immediately began interviewing appellant once he was
detained.[4] 
At that point, the officers noticed signs of intoxication and made the decision
to investigate further.  Thus, unlike the situation in McGraw and Villalobos,
here the officers actually conducted an investigation; their actions did not
constitute an arrest. Cf. Burkes v. State, 830 S.W.2d 922, 925
(Tex. Crim. App. 1991) (stating that, when no investigation is undertaken, Athe detention cannot
be considered investigatory and rises to the level of an arrest@).

Appellant=s reliance on Taylor is also
misplaced.  There, the court found that the defendant was under arrest when, in
an apparent sting operation, police officers blocked her vehicle in a carwash
stall and questioned her with at least one revolver drawn. See Taylor,
874 S.W.2d at 364B65.  However, here the record shows that
Officers Villanueva and Jensen confronted appellant by activating their
emergency equipment and preventing his exit from the drive-through line.  They
did not confront appellant with their revolvers drawn or otherwise exhibit more
force than was reasonably necessary to effectuate the goal of the detention. 
We now examine the reasonableness of the next level of the officers= intrusion.

2.       Removing
Appellant From His Vehicle and Questioning Him Did Not Transform the
Investigative Detention Into an Arrest.








Next, the officers= removal of
appellant from his vehicle and their questioning of appellant did not transform
the investigative detention into an arrest.  These acts did not exceed the
force reasonably necessary to effect the goal of the detention:  investigation.
See Berkemer, 468 U.S. at 442 (removing appellant from his vehicle and
asking him a Amodest number of questions@ did not transform
the investigative detention into an arrest); see also State v. Waldrop,
7 S.W.3d 836, 839 (Tex. App.CAustin 1999, no pet.) (concluding that
appellant was not Ain custody@ for Miranda purposes
when he was removed from his truck and questioned by an officer).  Moreover,
after removing appellant from his vehicle, and while they interviewed him,
Officers Villanueva and Jensen observed that appellant had bloodshot eyes, that
his speech was slurred, and that he emitted a strong odor of alcohol.  In light
of these facts, the officers acted reasonably in continuing to detain appellant
in order to investigate whether he had been driving while intoxicated. See
Razo v. State, 577 S.W.2d 709, 711 (Tex. Crim. App. 1979) (facts that come
to an officer=s attention during the course of a routine traffic
stop may justify a continued detention and a broader investigation); see
also State v. Stevenson, 958 S.W.2d 824, 828B29 (Tex. Crim.
App. 1997) (detention and questioning by police officer during a DWI
investigation, without more, is not custody).

Furthermore, both officers testified that appellant was
only detained while he waited for the DWI task force officer to arrive, and
that he was not under arrest at this time.  Although the officers= testimony is not
dispositive in determining whether an arrest has taken place, it is a factor we
consider. See Rhodes, 945 S.W.2d at 117.  We next examine the
reasonableness of the final level of the officers= intrusion.

3.       Placing
Appellant in the Back of the Patrol Car Did Not Transform the Investigative
Detention Into an Arrest.








Finally, the officers= decision to place
appellant in the back of their patrol car to await the arrival of the DWI task
force officer did not transform the investigative detention into an arrest. 
Placing appellant in the back of the patrol carCunhandcuffedCdid not exceed the
force reasonably necessary to effect the goal of the detention. See
Stephenson v. State, No. 01-96-01114-CR, 1997 WL 751109, at *6 (Tex. App.CHouston [1st
Dist.] Dec. 4, 1997, pet. ref=d) (not designated for publication)
(placing a DWI suspect unhandcuffed in the back of a patrol car pending the
arrival of a DWI task force officer was reasonable restraint and did not render
the detention an arrest; the detaining officer Asought only to
maintain the status quo@ until the task force officer arrived). 
Officer Jensen testified that he placed appellant in the back seat of the
patrol car to await the arrival of the DWI task force officer so that appellant
Adidn=t go anywhere,
[didn=t] drink any
alcohol or throw up, or anything like that.@  Based on these
facts, the officers= placement of appellant in the back seat
of the patrol car was reasonably necessary to maintain the status quo until the
DWI task force officer arrived. See Nargi v. State, 895 S.W.2d 820, 823
(Tex. App.CHouston [14th Dist.] 1995), pet. dism'd, 922
S.W.2d 180 (Tex. Crim. App.1996) (chasing, ordering suspect to the ground, then
handcuffing suspect was reasonable restraint and force did not constitute
arrest); Gunnel v. State, No. 14-04-00214-CR, 2005 WL 481355, at *7
(Tex. App.CHouston [14th Dist.] March 1, 2005, pet. dism=d) (mem. op., not
designated for publication) (finding that suspect was subject to only an
investigative detention when he was handcuffed and placed in the back of the
patrol car).

Moreover, the length of appellant=s detention was
reasonable under the circumstances.[5] 
An investigative detention must be temporary and last no longer than is
necessary to effectuate the purpose of the stop. See Davis v. State, 947
S.W.2d 240, 245 (Tex. Crim. App. 1997).  Officer Jensen estimated that the
elapsed time between contact with appellant and the arrival of the DWI task
force was Amaybe ten to fifteen minutes.@  We
conclude that the length of appellant=s detention did
not go beyond the boundaries of an investigative detention. See Vallejo v.
State, No. 03-00-00750-CR, 2001 WL 1422132, at *1 (Tex. App.CAustin Nov. 15,
2001, no pet.) (not designated for publication) (twenty-minute wait for a DWI
task force officer did not transform the investigative detention into an
arrest); Stephenson, 1997 WL 751109, at *6 (characterizing
fifteen-minute wait for DWI task force as Abrief,@ and did not
render investigative detention an arrest).

Therefore, based on the totality of the circumstances, we
hold that, at the time his videotaped statements were made, appellant was the
subject of an investigative detention.  He was not under arrest.  Accordingly, 
appellant=s videotaped statements regarding his alcohol
consumption were not the product of  custodial interrogation and were
admissible even absent Miranda warnings.  Thus, the trial court did not
abuse its discretion in admitting appellant=s videotaped
statements into evidence.  We overrule appellant=s sole issue.








                                                      Conclusion

Having addressed and overruled
appellant=s sole issue, we affirm the trial
court=s judgment.

 

 

/s/      Adele Hedges

Chief Justice

 

 

Judgment rendered
and Memorandum Opinion filed July 1, 2008.

Panel consists of
Chief Justice Hedges, Justice Boyce, and Senior Justice Hudson.*

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

_________________________________

*  Senior Justice
J. Harvey Hudson sitting by assignment.









[1]  384 U.S. 436 (1966).





[2]  Specifically, Officer Pritchard administered the
Horizontal Gaze Nystagmus (HGN) test, the Romberg test, the Aone-leg stand@
test, and the Awalk-and-turn@
test on appellant.  Officer Pritchard testified that appellant=s performance on the HGN test indicated Aintoxication,@
while his performance on the Romberg, one-leg stand, and walk-and-turn tests
indicated Aa high level of intoxication.@ 





[3]  A consensual encounter occurs when a law enforcement
officer approaches an individual in public to ask questions. See Pennywell
v. State, 127 S.W.3d 149, 152 (Tex. App.CHouston
[1st Dist.] 2003, no pet.).  An officer needs no justification for a consensual
encounter, which triggers no constitutional protections. Id.  Because
the parties do not allege that the present suit involves a consensual encounter
between appellant and Officers Villanueva and Jensen, we focus our discussion
on the latter two types of interactions.





[4]  Specifically, Officer Villanueva testified that he and Officer Jensen Ainterviewed@ appellant after they ordered him
out of his vehicle.  Officer Jensen specified that he actually spoke to
appellant at the scene, and asked him Awhat he was doing@ and A[whether] he had been drinking,@ based on the information provided
by Street.  In addition, appellant asserts in his brief that A[he] was removed from his vehicle
and questioned by the officers.@





[5]  Though appellant does not independently challenge
the length of his detention as a factor bearing on our determination, we
nonetheless address it because it is a factor we consider.  See Mount, 217 S.W.3d at 724.