In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00230-CR


______________________________




CLYDE WASHINGTON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


 Bowie County, Texas


Trial Court No. 08M1066-CCL




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Clyde Washington appeals from his conviction by a jury of the offense of harassment. See
Tex. Penal Code Ann. § 42.07 (Vernon 2003). The jury assessed his punishment at 120 days'
confinement and a fine of $2,000.00. (1) Washington was represented by the public defender's office
at trial and by appointed counsel on appeal. Washington's attorney has filed a brief in which she
concludes that the appeal is frivolous and without merit, after a review of the record and the related
law.

 Counsel states that she has studied the record and finds no error preserved for appeal that
could be successfully argued. The brief contains a professional evaluation of the record and
advances two arguable grounds for review. This meets the requirements of Anders v. California, 386
U.S. 738 (1967); Stafford v. State, 813 S.W.2d 503 (Tex. Crim. App. 1991); and High v. State, 573
S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978).

 Counsel mailed a copy of the brief to Washington April 2, 2009, informing Washington of
his right to examine the entire appellate record and to file a pro se response. Counsel simultaneously
filed a motion with this Court seeking to withdraw as counsel in this appeal, and requesting an
extension of time for Washington to file his pro se response. That extension was granted by this
Court until May 28, 2009. Counsel also notified this Court in that motion that Washington had not
kept her office informed of his whereabouts since his release from custody and that she was
uncertain as to whether he had received the letter and brief she had mailed to him. A criminal
defendant who fails to keep his or her attorney informed of his or her current address forfeits the
right to receive a copy of the Anders brief and the right to file a pro se response. In re Schulman, 252
S.W.3d 403 (Tex. Crim. App. 2008). Washington has not filed a response or a request for an
extension of time in which to file such a response. 

 We have determined that this appeal is wholly frivolous. We have independently reviewed
the clerk's record and the reporter's record, and we agree that no arguable issues support an appeal. 
See Bledsoe v. State, 178 S.W.3d 824, 826-27 (Tex. Crim. App. 2005). In a frivolous appeal
situation, we are to determine whether the appeal is without merit and is frivolous, and if so, the
appeal must be dismissed or affirmed. See Anders, 386 U.S. 738.


 We affirm the judgment of the trial court. (2)





 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 2, 2009

Date Decided: July 3, 2009


Do Not Publish
1. Washington appeals from four separate convictions of harassment in companion appeals,
cause numbers 06-08-00228-CR, 06-08-00229-CR, 06-00230-CR, and 06-00231-CR, in which
opinions are released this date. He was sentenced in each case to 120 days' confinement, with the
sentences to run concurrently and fines of $2,000.00.
2. Since we agree this case presents no reversible error, we also, in accordance with Anders,
grant counsel's request to withdraw from further representation of Washington in this case. No
substitute counsel will be appointed. Should Washington wish to seek further review of this case
by the Texas Court of Criminal Appeals, Washington must either retain an attorney to file a petition
for discretionary review or file a pro se petition for discretionary review. Any petition for
discretionary review must be filed within thirty days from the date of either this opinion or the last
timely motion for rehearing that was overruled by this Court. See Tex. R. App. P. 68.2. Any petition
for discretionary review must be filed with this Court, after which it will be forwarded to the Texas
Court of Criminal Appeals along with the rest of the filings in this case. See Tex. R. App. P. 68.3. 
Any petition for discretionary review should comply with the requirements of Rule 68.4 of the Texas
Rules of Appellate Procedure. See Tex. R. App. P. 68.4.



border-color: black;
 margin-top: 25px;
 padding: 6px;
 line-height: normal
}

span.WPNormal
{
 font-family: "Arial", sans-serif;
 font-size: 12pt;
 font-weight: normal;
 font-style: normal;
 font-variant: normal;
 text-align: left;
 text-decoration: none;
 color: black;
 vertical-align: middle;
 text-indent: 0in
}

body
{
 font-family: "Arial", sans-serif;
 font-size: 12pt;
 font-weight: normal;
 font-style: normal
}

















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00095-CR
______________________________


VICTOR KENNETH CARTER, JR., Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 8th Judicial District Court
Hopkins County, Texas
Trial Court No. 0316929


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Victor Kenneth Carter, Jr., appeals his conviction for felony assault on a family
member, his long-term girlfriend, Pamela Wright.


 See Tex. Pen. Code Ann. § 22.01(b)(2)
(Vernon Supp. 2004–2005). Carter stipulated to the jurisdictional prior conviction for
assault on a family member.


 The sentence was enhanced to a second degree felony by
a prior felony conviction for delivery of a controlled substance. See Tex. Pen. Code Ann.
§ 12.42(a)(3) (Vernon Supp. 2004–2005). Carter stipulated to this prior conviction as well. 
A jury found Carter guilty and assessed his punishment at seventeen years' imprisonment. 
The trial court sentenced him in accordance with the jury's verdict. Carter appeals, alleging
the trial court erred by denying his motion to suppress and by admitting Wright's
statements to the police under the "excited utterance" exception to the hearsay rule. We
affirm the judgment.
Factual Background
          Carter and Wright lived as husband and wife, and had a relationship for
approximately thirty years. On a rainy, stormy night, Carter and Wright became involved
in a heated argument. On responding to a domestic disturbance call, Kenny Stillwagoner,
an officer with the Sulphur Springs Police Department, observed Wright standing in the
front yard in the rain with a "busted lip," with blood on her shirt, and with mud and grass on
her clothing. Wright informed Stillwagoner that Carter had pushed her down, grabbed her
by the face holding her mouth shut, and dragged her through the mud. In the process of
responding to the same domestic disturbance call, Brad Horton, also with the Sulphur
Springs Police Department, observed Carter walking away from the scene approximately
four blocks down the street. Horton recognized Carter and detained him. When
Stillwagoner radioed that an assault had occurred, Horton then requested Carter to
accompany him to the house where Wright was located. After further investigation, Carter
was arrested for assault on a family member. Wright testified at trial that, on the night in
question, Carter did not assault her and that she fell in the flower bed. Wright did admit
that her lip had been injured that night and that her shirt had blood on it. Wright also
admitted she had dropped assault charges against Carter in the past at the request of her
children. Wright testified she has used and still does use illegal drugs. In addition, Wright
testified that "she lie[s] a lot. When you're on drugs you tend to do that." 
          Although Wright testified that she had lied to the police and that she simply fell that
night, the jury found Carter guilty of felony assault on a family member. 
Summary
          Carter contends the trial court should have granted his motion to suppress because
the police detained him illegally by arresting him without a warrant and without sufficient
probable cause. In addition, Carter complains the evidence did not show Wright was still
under the stress of excitement caused by the event. Without Wright's statement, Carter
argues there is legally insufficient evidence he committed assault on a family member. We
first address whether Carter was initially arrested or only detained as an investigatory
detention. We conclude the trial court did not abuse its discretion in finding the police only
detained Carter rather than arrested him, and the transporting of Carter did not exceed the
permissible bounds of an investigatory detention. Second, we address whether the trial
court erred in admitting Wright's initial statements to the police under the "excited
utterance" exception. We conclude the trial court did not clearly abuse its discretion. Last,
this opinion determines the evidence was legally sufficient.
Carter was not Illegally Arrested
          Carter contends the trial court erred in not granting his motion to suppress because
the police arrested him without sufficient probable cause or a warrant. Both Stillwagoner
and Horton received a dispatch call concerning a family disturbance which allegedly
occurred at 732 Fuller Street. Stillwagoner proceeded directly to 732 Fuller Street. While
responding to the dispatch call, Horton observed Carter at the 300 block of Fuller Street,
walking away from 732 Fuller Street. Horton testified he knew Carter well and knew him
on sight. Horton called Carter over to his car and questioned him about "what was going
on as far as the call that [the police] had received." When Horton received a call from
Stillwagoner that an assault had occurred, Horton asked Carter to get into the car and
transported him to 732 Fuller Street. The State contends Carter's detention at 300 Fuller
Street constituted only an investigatory detention, but Carter contends the detention
constituted an arrest.
          A trial court's decision to grant or deny a motion to suppress is reviewed under an
abuse of discretion standard. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). 
The general rule is that an appellate court should afford almost total deference to a trial
court's determination of the historical facts supported by the record, especially when the
trial court's fact-findings are based on an evaluation of credibility and demeanor. State v.
Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). At a suppression hearing, the trial court
is the exclusive trier of fact and judge of the credibility of the witnesses. Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We are also to afford such deference to a trial
court's ruling on "application of law to fact questions," also known as "mixed questions of
law and fact," if the resolution of those questions turns on an evaluation of credibility and
demeanor. Ross, 32 S.W.3d at 856. We may review de novo those questions not turning
on credibility and demeanor. Id. Where, as here, a trial court makes no explicit findings
of historical fact, the appellate court should view the evidence in the light most favorable
to the trial court's ruling and assume the trial court made implicit findings of fact. 
Carmouche v. State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). 
          In Harris, Chief Justice Cornelius described the categories of police interaction with
civilians as follows:
There are three general categories of police and civilian interaction.
The first category is that of an encounter. Police officers do not violate the
Fourth Amendment by merely approaching an individual in public to ask
questions. Such an encounter does not require any justification whatsoever
on the part of an officer. United States v. Mendenhall, 446 U.S. 544, 100
S.Ct. 1870, 64 L.Ed.2d 497 (1980); Daniels v. State, 718 S.W.2d 702, 704 
(Tex. Crim. App.), cert. denied, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252
(1986).
 
The second category is that of a temporary or investigative detention.
This is a brief stop of a suspicious individual in order to determine his identity
or to maintain the status quo momentarily while obtaining more information.
Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
Such a detention requires that the officers have a reasonable suspicion that
the person detained is involved in criminal activity. Daniels v. State, 718
S.W.2d at 704–05.
 
The third category is that of an arrest. An arrest must be justified by
probable cause to believe that the suspect has committed or is committing
an offense. Amores v. State, 816 S.W.2d 407, 416 (Tex. Crim. App. 1991);
see generally Francis v. State, 896 S.W.2d 406 (Tex. App.--Houston [1st
Dist.] 1995, pet. granted).

Harris v. State, 913 S.W.2d 706, 708 (Tex. App.—Texarkana 1995, no pet.). The central
issue with which we must be concerned in this case is into which of these categories did
the officer's detention of Carter fall. 
          "Unlike an encounter, an investigative detention and an arrest are seizures." Josey
v. State, 981 S.W.2d 831, 838 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). Since
both an investigative detention and an arrest involve a seizure of the citizen, a certain
objective level of suspicion must be shown by the officer to justify the seizure. State v.
Larue, 28 S.W.3d 549, 553 n.8 (Tex. Crim. App. 2000). If the interaction involves an
investigative detention, the officer must show reasonable suspicion the citizen is connected
to criminal activity. Id. If the interaction is an arrest, the officer must show probable cause
to believe the citizen has engaged in or is engaging in criminal activity. Francis v. State,
922 S.W.2d 176, 178 (Tex. Crim. App. 1996). 
          Our inquiry requires us to consider the difference between an investigatory detention
and an arrest. Article 15.22 of the Code of Criminal Procedure provides that "[a] person
is arrested when he has been actually placed under restraint or taken into custody . . . ." 
Tex. Code Crim. Proc. Ann. art. 15.22 (Vernon 1977). The Texas Court of Criminal
Appeals has interpreted the above statute to require consideration of the degree of the
restriction or restraint to distinguish an arrest from other detentions.


 The relevant inquiry
according to the Texas Court of Criminal Appeals is whether "appellant had been restricted
or restrained in his liberty to such a degree as to constitute an arrest." Amores, 816
S.W.2d at 412. An "arrest" occurs "when a person's liberty of movement is successfully
restricted or restrained, whether this is achieved by an officer's physical force or the
suspect's submission to the officer's authority." Medford, 13 S.W.3d at 773. In Medford,
the Texas Court of Criminal Appeals held an arrest is complete only if "a reasonable
person in the suspect's position would have understood the situation to constitute a
restraint on freedom of movement of the degree which the law associates with formal
arrest." Id. at 773–74 (quoting United States v. Corral-Franco, 848 F.2d 536, 540 (5th Cir.
1988)). The subjective intent of either the police officer or the defendant is irrelevant. 
Vicioso v. State, 54 S.W.3d 104, 110 (Tex. App.—Waco 2001, pet. ref'd); see Medford, 13
S.W.3d at 773–74; cf. California v. Hodari D., 499 U.S. 621, 628 (1991) (show of authority
should be determined objectively). Factors which Texas courts have considered are
whether the officer actually undertakes an investigation,


 the accused is handcuffed,


 the
accused is detained at gunpoint,


 the number of police far outnumbers the citizens,


 the
use of threatening language,


 the transporting of the accused to another location,


 the
blocking of the accused's vehicle,


 and the use of other physical force.



          Carter argues that, because the arrest report indicates the place of arrest as 300
Fuller Street, he was clearly arrested at 300 Fuller Street. We note that the arrest report
stated the place of arrest was 300 Fuller Street and Stillwagoner testified that may have
been what he thought at the time. However, Stillwagoner was not present at 300 Fuller
Street. Horton testified that he did not prepare the arrest report and that Stillwagoner was
never present at 300 Fuller Street. Stillwagoner also stated he was never present at 300
Fuller Street. Further, Stillwagoner later testified Carter was initially detained at 300 Fuller
Street. Stillwagoner testified Horton never informed him that he had arrested Carter at 300
Fuller Street. Horton testified Carter was only detained at 300 Fuller Street, not arrested. 
          Even if Stillwagoner and Horton subjectively believed they had arrested Carter, no
arrest had occurred. Because a reasonable person would not have understood the
situation to constitute a restraint on freedom of movement of the degree which the law
associates with formal arrest, Carter was merely detained rather than arrested. Horton
testified that he "asked" Carter to get into the car and denied that he "told" Carter to get
into the car. Carter was not handcuffed or read his rights at 300 Fuller Street. Although
Horton testified that Carter was not free to leave, he also testified that Carter was not
informed he was under arrest or was not free to leave. After the detention occurred,
Horton and Stillwagoner conducted further investigation. A reasonable person would not
have believed his or her freedom of movement had been restricted to the degree
associated with formal arrest. We conclude the trial court did not abuse its discretion in
determining Carter was initially merely detained at 300 Fuller Street, rather than arrested.
          Detention for investigation requires the officers to have a reasonable suspicion of
criminal activity. The Supreme Court in Terry v. Ohio established the test for investigative
detention, i.e., "Terry stops." Terry established a two-pronged test for investigative
detentions. To determine the reasonableness of an investigative detention, the court must
inquire: "(1) whether the officer's action was justified at its inception; and, (2) whether it
was reasonably related in scope to the circumstances which justified the interference in the
first place." Davis v. State, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997); see Terry v.
Ohio, 392 U.S. 1, 19–20 (1968). 
          "Under the first prong, 'the police officer must be able to point to specific and
articulable facts which, taken together with rational inferences from those facts, reasonably
warrant that intrusion.'" Davis, 947 S.W.2d at 242 (quoting Terry, 392 U.S. at 21). The
specific, articulable facts, along with rational inferences from those facts, must allow the
officer to reasonably conclude the person detained actually is, has been, or soon will be
engaged in criminal activity. United States v. Sokolow, 490 U.S. 1, 10 (1989). 
          The second prong of Terry requires the scope of the detention to be "like any other
search, . . . strictly circumscribed by the exigencies which justify its initiation." Davis, 947
S.W.2d at 243 (quoting Terry, 392 U.S. at 25). The officer, however, must diligently pursue
a means of investigation that lasts no longer than is necessary and should be the "least
intrusive means reasonably available." Id. at 245. 
          Horton had reasonable suspicion to detain Carter based on the dispatch call and
the subsequent radio call from Stillwagoner. Because the officers had specific, articulable
facts providing reasonable suspicion Carter had committed a crime, the first prong of Terry
is satisfied. However, the officers must have diligently pursued a means of investigation
that lasted no longer than was necessary and was the "least intrusive means reasonably
available." 
          The issue then becomes whether the officer's transporting of Carter to 732 Fuller
Street was an unreasonable intrusion. We note the act of transporting a suspect to
another location may be a factor indicating an arrest has occurred. See Delk, 855 S.W.2d
at 711–12; Jones, 746 S.W.2d at 283; Moore, 55 S.W.3d at 659; Vicioso, 54 S.W.3d at
109–10. Under the second prong of Terry, the temporary detention of Carter must be
reasonable. "An investigative detention must be temporary and last no longer than is
necessary to effectuate the purpose of the stop." Davis, 947 S.W.2d at 245 (quoting Perez
v. State, 818 S.W.2d 512, 517 (Tex. App.—Houston [1st Dist.] 1991, no pet.)); see Florida
v. Royer, 460 U.S. 491, 500 (1983); see also Herrera v. State, 80 S.W.3d 283, 287 (Tex.
App.—Texarkana 2002, pet. ref'd). "The investigative methods employed should be the
least intrusive means reasonably available to verify or dispel the officer's suspicion in a
short period of time." Davis, 947 S.W.2d at 245 (quoting Perez, 818 S.W.2d at 517).
          The Supreme Court has indicated that a nonarrest detention made on reasonable
suspicion can be rendered unreasonable by excessive movement of the suspect, e.g., the
movement from a field location to a station house is excessive. See Hayes v. Florida, 470
U.S. 811 (1985); Dunaway v. New York, 442 U.S. 200 (1979). In Royer, the Supreme
Court, in a plurality opinion, held movement of approximately forty feet was excessive. 
Royer, 460 U.S. 491. The Supreme Court's concern appears to focus on the fact the
movement was unrelated to any legitimate law enforcement objective and significantly
changed the nature of the detention. In Royer, the suspect was detained on a busy airport
concourse with the suspicion he was transporting narcotics. Id. at 494. The suspect was
then moved a distance of approximately forty feet to a small office removed from public
view, and his ticket and driver's license were seized. Id. The Supreme Court held the
movement changed the nature of the detention by placing the defendant in a small room
essentially under the control of the officers and removing the detention from public view. 
Id. at 502–03. The Supreme Court further reasoned the movement was unrelated to the
objective of the detention—searching Royer's luggage—which could have just as easily
been searched on the concourse. Id. at 505. The Court held that the movement did not
further any legitimate law enforcement purpose. Id. Therefore, the Supreme Court held
that the methods employed in Royer were not the least intrusive available. Id. at 505–06.
          This case is clearly distinguishable from Royer. In our case, the movement failed
to change the nature of the detention. Carter was moved from being detained in the street
to being detained in front of his house. Unlike Royer, this move did not create an
environment which removed Carter from public view or placed him more extensively under
the control of the officers. Further, the movement did facilitate greater convenience in
investigating the offense, unlike the situation in Royer. Therefore, the movement did stem
from a legitimate law enforcement purpose. 
          Further, we note several Texas courts have held that transporting an individual to
the scene of the alleged crime or another location is not an unreasonable intrusion. Garza
v. State, No. 06-03-00058-CR, 2004 Tex. App. LEXIS 2467 (Tex. App.—Texarkana
Mar. 18, 2004, no pet.) (not designated for publication) (transporting suspect to residence
in order to perform consensual search); Joseph, 865 S.W.2d at 103 (least intrusive means
available to investigate suspicion); Davis, 783 S.W.2d at 317 (reasonable investigative
detention involving transporting suspect to scene two and a half miles away); see Dittoe
v. State, 935 S.W.2d 164, 166–67 (Tex. App.—Eastland 1996, no pet.) (ordered to return
to victim's house, which was located a few blocks away). Because this case is
distinguishable from Royer, we conclude the trial court did not abuse its discretion in
determining Carter was merely detained at 300 Fuller Street and the subsequent
transporting of Carter to the scene was reasonable.
          Carter also contends the police officers did not have probable cause to arrest him
for assault/family violence. Following the reasoning of the Supreme Court that the trial
court is not in an appreciably better position than the reviewing court to make a
determination concerning probable cause, the Texas Court of Criminal Appeals has held
that the review of probable cause of a warrantless seizure of a person should be reviewed
de novo. Guzman, 955 S.W.2d at 87.



          In reviewing a warrantless arrest to determine the existence of probable cause,
courts should examine the facts known to the officer at the time of the arrest. Atkins v.
State, 919 S.W.2d 770, 774 (Tex. App.—Houston [14th Dist.] 1996, no pet.). 
"Subsequently discovered facts or later-acquired knowledge, like the fruits of a search,
cannot retrospectively serve to bolster probable cause at the time of the arrest." Id. 
Probable cause exists if the officers have reasonably trustworthy information sufficient to
warrant a reasonable belief an offense has been or is being committed. McGee v. State,
105 S.W.3d 609, 614 (Tex. Crim. App. 2003). While probable cause requires more than
mere suspicion, it requires far less evidence than the evidence needed to support a
conviction. Middleton v. State, 125 S.W.3d 450, 460 (Tex. Crim. App. 2003). 
          When Carter was arrested at 732 Fuller Street, the officers had been informed by
Wright that Carter had pushed her down, grabbed her by the face holding her mouth shut,
and dragged her through the mud. Stillwagoner had observed that Wright had a "bloody
lip" and had mud, grass, and blood on her shirt. We conclude the police officers had
probable cause to arrest Carter.
          Carter's last argument is the police officers illegally arrested him without a warrant. 
In Texas, a police officer may make a warrantless arrest only if "(a) there is probable cause
with respect to that individual, and (b) the arrest falls within one of the exceptions specified
in the Texas Code of Criminal Procedure." McCraw v. State, 117 S.W.3d 47, 54 (Tex.
App.—Fort Worth 2003, pet. ref'd); see Tex. Code Crim. Proc. Ann. arts. 14.01, 14.02,
14.04 (Vernon 1977), art. 14.03 (Vernon Supp. 2004–2005). Section 14.03(a)(4) provides
that a peace officer may arrest "persons who the peace officer has probable cause to
believe have committed an assault resulting in bodily injury to a member of the person's
family or household." Tex. Code Crim. Proc. Ann. art. 14.03(a)(4); see McCraw, 117
S.W.3d at 54. Because Horton and Stillwagoner had probable cause to believe an assault
involving bodily injury occurred, the statute permitted the warrantless arrest of Carter. 
          Carter cites McCraw for the proposition the police could not arrest a suspect without
a warrant when the alleged assault did not occur in the presence of the arresting officer. 
This is an incorrect reading of McCraw. McCraw held that a police officer could arrest a
suspect if he or she either observed the assault or had probable cause to believe an
assault on a family member occurred. McCraw stated that "[f]or an officer to effect a
warrantless arrest for an assault, the assault must either occur in the officer's presence or
view or the officer must have probable cause to believe that the assault resulted in bodily
injury to a member of the suspect's family or household." McCraw, 117 S.W.3d at 54
(emphasis added). In McCraw, the court determined the officer did not observe the alleged
assault and did not have probable cause to believe that bodily injury occurred. Id. This
case is distinguishable from McCraw because the police had probable cause to believe
that Carter had intentionally or knowingly caused bodily injury to a family member.
          We hold the trial court did not abuse its discretion in denying the motion to
suppress. The trial court did not abuse its discretion in determining that Carter's detention
at 300 Fuller Street was merely an investigatory detention. The trial court also did not
abuse its discretion in concluding the subsequent transporting of Carter to 732 Fuller Street
was reasonable. We conclude the officers had probable cause to arrest Carter and a
warrantless arrest was authorized under the exceptions to the requirement of a warrant. 
Wright's Statements were Excited Utterances
          In his second point of error, Carter alleges the trial court erred by admitting hearsay
under the "excited utterance" exception.


 Carter contends the State presented insufficient
evidence the statements were "excited utterances." According to Carter, the evidence
would be insufficient to support the jury's verdict without the hearsay testimony.
          A trial court's decision concerning the admission of evidence under an exception to
the hearsay rule, including the "excited utterance" exception, should not be reversed on
appeal unless a clear abuse of discretion is shown. Zuliani v. State, 97 S.W.3d 589, 595
(Tex. Crim. App. 2003). An abuse of discretion occurs only when the trial court's decision
"was so clearly wrong as to lie outside that zone within which reasonable persons might
disagree." Id. (quoting Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).
          "'Hearsay' is a statement, other than one made by the declarant while testifying at
the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R.
Evid. 801(d). Hearsay should not be admitted except as provided by statute or by the
Rules of Evidence. Tex. R. Evid. 802. "A statement relating to a startling event or
condition made while the declarant was under the stress of excitement caused by the event
or condition" is not excluded by the hearsay rule. Tex. R. Evid. 803(2). This exception is
called the "excited utterance" exception. Under the "excited utterance" exception, three
requirements must be shown:
(1) the statement must be the product of a startling occurrence that produces
a state of nervous excitement in the declarant and renders the utterance
spontaneous and unreflecting,
 
(2) the state of excitement must still so dominate the declarant's mind that
there is no time or opportunity to contrive or misrepresent, and
 
(3) the statement must relate to the circumstances of the occurrence
preceding it.
 
Harris v. State, 133 S.W.3d 760, 771 (Tex. App.—Texarkana 2004, pet. ref'd). It is the
absence of opportunity for reflection and fabrication—an opportunity lost because the
declarant is in the grips of overwhelming emotion—that forms the basis for the "excited
utterance" exception. Id. "In other words, the statement is trustworthy because it
represents an event speaking through the person rather than the person speaking about
the event." Id. (quoting Zuliani, 97 S.W.3d at 595).
          The paramount factor is whether the declarant is still dominated at the time by
emotions triggered by the principal act or event. Snellen v. State, 923 S.W.2d 238, 243
(Tex. App.—Texarkana 1996, pet. ref'd); see King v. State, 953 S.W.2d 266, 269 (Tex.
Crim. App. 1997). Therefore, statements made while the declarant was in the grip of
emotion, excitement, fear, or pain of the exciting event are still admissible even after an
appreciable time has elapsed between the exciting event and the statement. Salazar v.
State, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001); Snellen, 923 S.W.2d at 243; Jones v.
State, 772 S.W.2d 551, 554–55 (Tex. App.—Dallas 1989, pet. ref'd); see Hawkins v. State,
792 S.W.2d 491, 494–95 (Tex. App.—Houston [1st Dist.] 1990, no pet.). Whether the
statement was made in response to questioning is simply a factor to be considered, and
the statement may still qualify as an excited utterance. Salazar, 38 S.W.3d at 154.
          Over the defense's objection, the trial court allowed the State to introduce evidence
of Wright's statements to the police minutes after the incident occurred. When she made
the statements, Wright was still upset and crying due to the assault. Stillwagoner testified
outside the presence of the jury as follows:
[State]And what was Ms. Wright's state when you got there?
[Stillwagoner]She was pretty upset, crying. She was soaking wet.
[State]By pretty upset what do you mean?
[Stillwagoner]Crying and just, you know, upset.
[State]Would you say slighty upset or would you say very upset?
[Stillwagoner]I would say very upset.
. . . .
          [State]           And she was crying, she was very upset. Anything else you
noticed about her?
 
                     . . . .
 
[Stillwagoner]Yeah, there was grass and dirt on her clothing and I
noticed grass and dirt on her face. She had a bloody lip and there was blood
on the front of her shirt.
 
[State]Was it just a drop or two or what?
 
[Stillwagoner]It was some good size spots. It wasn't drops.
 
. . . .
 
[Defense Counsel]Was she so upset at the time you talked to her that you
couldn't even talk to her?
 
[Stillwagoner]No.
 
[Defense Counsel]In other words, she was settled down enough where you
could talk to her?
 
[Stillwagoner]I had calmed her down some, yes.

                     . . . .
 
[Defense Counsel]She was in control of herself to the point where she
could remember what had happened minutes and maybe hours before; is
that correct?
 
[Stillwagoner]Sure.
 
. . . .
 
[State]Did she seem like she was still excited and very upset from
what had happened to her when she was talking to you?
 
[Stillwagoner]Yes.
 
[State]And when she told you all these things?
 
[Stillwagoner]Yes.
 
[State]Did she seem like she was calmly and coolly reflecting upon
what had happened and was she still excited?
 
[Stillwagoner]Yes, she was still excited.
 
[State]So she wasn't calmly and coolly reflecting then, was she?
 
[Stillwagoner]No, sir.
 
. . . .
 
[Defense Counsel]. . . . But she was relating this to you and it's not to the
point to where she was totally dominated by emotion; is that correct?
 
[Stillwagoner]As I had calmed her down enough to talk to me.
 
. . . .
 
[Court]All right. Now the Court, if I understood you right, you
said you arrived -- the call came and you arrived between two and three
minutes later?
 
[Stillwagoner]Yes, sir.
 
[Court]And you said that she was in an emotional state at that
point? She was --
 
[Stillwagoner]Very upset.
 
[Court]-- very upset. And were there tears or crying?
 
[Stillwagoner]Yes, sir.

          The trial court did not clearly abuse its discretion in finding Wright was still in the grip
of emotion, excitement, fear, or pain caused by the assualt when she made her statements
to the police. Stillwagoner testified he arrived at the scene approximately two or three
minutes after the dispatch. He testified Wright was extremely upset and was still crying. 
Although Stillwagoner testified Wright had calmed down to a certain extent, the issue of
whether she was still under the influence of the excitement of the assault is within the zone
of reasonable disagreement. The trial court did not clearly abuse its discretion in admitting
Wright's statement as an excited utterance.
The Evidence is Legally Sufficient
          Carter argues that, without the hearsay evidence admitted under the excited
utterance exception, there is legally insufficient evidence to support the jury's verdict. 
Because legal sufficiency was raised in the point of error concerning the alleged error in
admitting Wright's statements to police, we will address whether legally sufficient evidence
exists to support the jury's verdict.
          In our review of the legal sufficiency of the evidence, we employ the standards set
forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the
relevant evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Turner v.
State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
          Section 22.01 provides that a person commits an offense if the person "intentionally,
knowingly, or recklessly causes bodily injury to another, including the person's spouse" and
that the offense is a felony of the third degree if it is committed against "a member of the
defendant's family or household, if it is shown on the trial of the offense that the defendant
has been previously convicted of an offense against a member of the defendant's family
or household under this section." Tex. Pen. Code Ann. § 22.01 (Vernon Supp.
2004–2005). Section 22.01 states that "'[f]amily' has the meaning assigned by Section
71.003, Family Code." Tex. Pen. Code Ann. § 22.01. Section 71.003 of the Family Code
provides that "family" includes "individuals who are the parents of the same child, without
regard to marriage, . . . ." Tex. Fam. Code Ann. § 71.003. 
          Viewed in a light most favorable to the prosecution, sufficient evidence exists for a
rational jury to conclude beyond a reasonable doubt Carter committed the offense. 
Stillwagoner observed Wright at the scene with a "bloody lip," with blood on her shirt, and
with mud and grass on her clothing. Wright informed Stillwagoner that Carter had pushed
her down, grabbed her by the face holding her mouth shut, and dragged her through the
mud. Wright testified Carter had been previously convicted of assaulting her, Carter
stipulated to the prior assault, and the State introduced the judgment of the previous
assault. Wright testified she and Carter have two children. We conclude legally sufficient
evidence exists.
Conclusion
          The trial court did not abuse its discretion in denying the motion to suppress or in
admitting Wright's statements to the police under the "excited utterance" exception. 
Legally sufficient evidence exists to support the conviction. 
          We affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      September 29, 2004
Date Decided:         October 28, 2004

Publish